UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X          **COMPLAINT**
James A Greene
_____
                                              Plaintiff

                    -against-                                          **Jury Trial Demanded**

WARNER MUSIC GROUP CORP
MEGAN PETE P/K/A MEGAN THEE STALLION
ANTHONY WHITE AKA  J White Did IT
1501 CERTIFIED ENTERTAINMENT
_____
                                              Defendants
----------------------------------------------------------------------X


## <u>COMPLAINT FOR INFRINGEMENT OF COPYRIGHT</u>

Plaintiff, James A Greene, *pro se*, hereby bring action against Defendants, Megan Pete, Anthony

 White, 1501 Certified Entertainment and Warner Music Group arising from allege as

follows:

### <u>INTRODUCTION</u>

1     Plaintiff, James A Greene aka Father Time 4000 MBP, who is a Hip Hop and in-house music

producer for the 90's rap group, Money Boss Players, who was once signed to Qwest Records. Plaintiff

also did outside production for artist such as Lord Tariq & Peter Gunz, Jesse West aka 3rd Eye and

N9ne, Soul Sonic Biggs of the Soul Sonic Force, Sadat X, the late Craig Mack, etc. On the exact date of

Oct 7, 1999, Plaintiff produced an instrumental music composition/sound recording, titled "Its About

To Be On". The music composition was distributed throughout the music industry to A&R's,

management teams, etc., with other unpublished compositions during the early part of the decade of

2000's. Years later Plaintiff created multiple CD's as Beat Mix Tapes and his music was circulated

throughout the streets of New York and music industry. CD's were also distributed throughout

various music industry venues. After learning some of his music was being infringed upon, Plaintiff began to Copyright his music as early as 2004. In 2012 Plaintiff started posting his music on social media platforms, such as You Tube and Daily Motion. In 2015 Plaintiff registered and copyrighted an instrumental album title Makin Moves, et al., with the application titled The Big Score with U.S. Copyright Office. The album contents contained 12 tracks, "Its About To Be On" is the 2nd sound recording/music composition copyrighted on the album. The 12 sound recordings were registered collectively as Unpublished Collections. In Aug of 2022, Plaintiff also registered the exact same contents of the sound recordings/music compositions as Performing Arts work Copyright.  As shown on the physical document, Copyright Registrations number  PAu 4-147-512 and SRu 1-210-744.

2     On March 6, 2020, defendants MEGAN PETE p/k/a Megan Thee Stallion, 1501 Certified Entertainment and 300 Entertainment/Warner Music Group, released her third single, song titled "Savage" from her EP SUGA. The song "Savage" was later remixed and featured, Beyonce Knowles-Carter. The song "Savage" achieved tremendous success worldwide, gained multi-Platinum status and won a Grammy. The song was produced by ANTHONY WHITE aka J White Did It. When hearing the song "Savage" for the first time, Plaintiff noticed the similarities between the music from "Savage" and music from Plaintiff's work "It's About To Be On". After listening to the song Savage over and over Plaintiff had all rights to believe that defendant's song "Savage" was indeed a derivative version of Plaintiff's work. Later Plaintiff found and downloaded an instrumental version of the song "Savage" and placed the two music compositions into a digital program called Virtual DJ, where Plaintiff was able to compare both compositions. While playing both compositions at the same time and at the same BPM/tempo, Plaintiff had no doubt the two compositions had mirror each other. After a long diligent research, Plaintiff knew for sure defendant's committed violations of Copyright Infringement upon his musical work.

3   On April 22, 2022, Plaintiff sent a Copyright Infringement Notice to all defendant's
representatives by way of USPS First Class certified mail. Along with the two music compositions and
a Virtual DJ mix comparison of the two music compositions on USB drive. Plaintiff was in
contact with some of the representatives before they all received the Notice. By April 29,
2022 all representatives of defendant's received and accepted the Notice willfully. After no response
from defendants, Plaintiff proceeded with filing complaint.

<u>**JURISTICTION AND VENUE**</u>

4   This is a civil action seeking damages and injunctive relief for copyright infringement under the
copyright laws of the United States, 17U.S.C. § 101 *et seq*.

5   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question
jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions)

6    Venue is proper under 28 U.S.C. § 1391(c), Warner Music Group is subject to the personal
jurisdiction of the Southern District of New York.

7   Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) Warner Music Group has its place
of business in the Southern District of New York.

8   The other defendants, Megan Pete, Anthony White and 1501 Certified Entertainment
are properly joined under Fed. R. Civ. P 20(a), and (2).

9   The Court has personal jurisdiction as the place of business of Warner Music Group is in the
Southern District of New York.

10  This Court has personal jurisdiction over Defendants because, based on information and belief,
Defendants have purposefully availed themselves of the benefits of conducting business within the
State of New York by directing their activities with respect to the infringing work, including them

marketing and promotion of the infringing work, to New York residents, who are able to purchase, download and stream the infringing compositions and recordings. Upon information and belief, Defendants, and each of them, have received substantial revenues from their exploitation of the infringing works in New York.

11  Upon information and belief, and as set forth above, Defendant Megan Pete, has performed the song "Savage" in New York to further exploit the infringing compositions and recordings, and have licensed, distributed and exploited the subject infringing song in the state of New York.

## **PARTIES**

12    Plaintiff, James A Greene aka Father Time 4000 MBP is a music producer, an individual and resides in the Bronx of New York, personal address is confidential. Tel: 646.460-0713. Contact information for service, C/O Grayson Walker/Notary Public 1865B E Tremont Ave. Bronx, New York 10460.

13    Defendant Megan Pete p/k/a Megan Thee Stallion is a recording artist, an individual and is a citizen of the State of Texas. Her personal address is confidential.  Representative Attorney Ilene S. Farkas, Pryor Cashman LLP, address, 7 Times Square New York, New York 10036, Tel: 212.421-4100, Management is known to be Roc Nation Management, address 9348 Civic Center Drive, Beverly Hills, CA 90210, Tel: 310. 867-7000.

14     Defendant Anthony White aka J White Did IT is a music producer, an individual, address Unknown, believed to be a citizen of the state of Missouri and now believed to be living in Dallas, Texas. Representative Attorney Ilene S. Farkas, Pryor Cashman LLP, address, 7 Times Square New York, New York 10036, Tel: 212.421- 4100, Management, Milk & Honey Management, address 201 Plymouth St.  suite# B, Brooklyn, New York 11201. Email: jwhitedidit@gmail.com

15    Defendant 1501 Certified Entertainment, LLC, is a limited liability company with its place of business at 207 Reinerman St. Houston, Texas 77007, Tel: 832.623-6832. Registered Agent is Carl Crawford, registered address is 15618 Bristol Lake Drive, Houston, Texas 77070.

16    Defendant Warner Music Group is a record company based in California and New York and is the parent company of 300 Entertainment. Place of business is at 777 S. Santa Fe Avenue, Los Angeles, CA 90021, Tel: 818. 846-9090. Its New York address is Paramount Plaza, 1633 Broadway New York, New York 10019, Tel: 212 275-4952 Representative Attorney Ilene S. Farkas, PRYOR CASHMAN LLP, address, 7 Times Square New York, New York 10036, Tel: 212.421-4100.

## NATURE OF ACTION

17   This Copyright Infringement action in violation of 17 U.S.C. § 101 et seq., arises from defendants' unauthorized reproduction, distribution and/or public performance of Plaintiff's copyrighted musical composition/sound recording "Its About To Be On". Plaintiff believes, and alleges, that Defendants are the writers, producers, performers, record label, distributors, and publishers who were involved with the creation, release, reproduction, exploitation, licensing, and public performance of the infringing and derivative musical composition/song "Savage" and the music video and other products embodying the infringing musical composition of song "Savage". Defendants Megan Pete, Anthony White, each received credit as writers and producers of the music and lyrics of "Savage". Defendants 1501 Certified Entertainment LLC, Warner Music Group upon belief are the publishers, distributors, recording labels and other entities that exploit the song "Savage".

18   The copyright infringement is based on the striking and substantial similarities of unauthorize

derivative work of the song "Savage" produced by defendant Anthony White and the music of "Its About To Be On" produced by Plaintiff James A Greene.

19    Plaintiff has all rights and evidence to believe, the music from song "Savage" performed by Megan Thee Stallion, produced by Anthony White is unauthorize "derivative work". Clearly an reproduced, a recreation, remix and parody of Plaintiff's registered copyrighted sound recording/ music composition/performing arts work "Its About To Be On".

20    The similarities consist of drum pattern, piano note pattern, siren sounds and has the same core expression, which is undeniable.

21    The instruments' sounds differ a little considering the times of production. "Its About To Be On" which was produced at the end of an analog sound era and "Savage" was produced in the now digital sound era. However, the sequence patterns of the music remain the same.

22    The similarities in the siren sounds are the type of siren that was used. The siren used in "Its About To Be On" is more of a traditional siren, in "Savage" the original siren sound was almost exactly the same until Anthony White altered the sound with an effect using a plugin device named Diva. (as shown in a demonstration video shown on Youtube) Which change the sound to more like a warning safety siren, but the idea and expression of the sirens are the same and gives the music the same dynamics.

23    The only difference is the tempo, "Savage" was slowed down to 84.50 bpm to accommodate todays sound and "Its About To Be On" is 95 bpm, which was somewhat an average tempo when created. When both music compositions are at the same tempo, the two compositions sound exactly the same and both compositions are merely in the same music key, B-chord and G sharp minor (G#m).

Which is demonstrated in the Virtual DJ video on usb drive presented to defendants with Copyright Infringement Notice. (SEE ATTACHMENTS, EXHIBIT 1&3, keyboard diagram)

24    When demonstrated in Virtual DJ both music compositions were played together on top of each other at the same time and same bpm/tempo. When listening to the compositions, the average listener or any expert would think there was one composition playing. The music compositions mirror each other, as shown in the virtual DJ demonstration comparison. Plaintiff have shown this comparison to over 100 people, not one person denied the similarities. In fact, at times during the mix some didn't know the difference between the two compositions when separated. Plaintiff even played the two compositions for children ranging from 6 to 12yrs old, when Plaintiff solo his composition and asked "what song was that playing", all of the children said "Savage" without hesitation. Plaintiff also had friends play both compositions to some of their friends who Plaintiff didn't know just to get an unbiased response, no person has yet to say the compositions sound different but stated they were the same composition.

25   Despite the small differences in the tempo, both compositions share "striking and substantial similarities" as in cases like **[Swirsky v. Carey, 376 F.3d 841, 844 (9th Cir. 2004)]** and **[Williams v. Gaye, No. 15-56880 (9th Cir. 2018)]** and share the same expression of idea throughout the whole composition. When comparing Plaintiffs claims of striking and substantial similarities vs **[Williams v. Gaye, No. 15-56880 (9th Cir. 2018)],** Plaintiff's claim is so much clearer and more undeniable. Also see **(Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 913–14 (9th Cir. (2010)).**

**THE PRODUCTION OF SAVAGE**

26  According to Anthony White the music for "Savage" was done on the spot in the studio. Anthony White states it took him between 10 to 15 minutes to do so. As a music producer myself, creating a new composition is a process which takes time unless you already know what you are intending to do. Just finding the right drum kick and snare you want to use can take longer than 15 minutes. Nevertheless, finding the right instruments you want to use for the track and the intangibles to go with it, like the hi-hats and percussions. Anthony White used up to 9 different sounds/instruments for the track "Savage". The sounds consist of drum kick and snare, 808 kick, 808 bass, hi-hat, percussions, piano, voice sample and warning siren. This means Anthony White would have had to find and choose each sound he wanted to use, record each sound into a sequence at approximately 2 minutes per sound, without second guessing what the actual track is going to sound like. What's most striking is the thought of incorporating and finding the sound for the siren to use. In a Youtube video Anthony White demonstrates how he created the siren sound. The sound initially was similar to Plaintiff's siren sound until he added an effect to the sound by slowing it down using a plugin device named Diva. He also had the thought of incorporating the sampled voice, creating this track all in 15 minutes. As a music producer, to accomplish this in a short period of time, the sequence for all instruments would have had to be programed already in his work station and he would of had already knew what sounds he was using. Which means the music was already done and Anthony White was reproducing a track he had already done elsewhere. Similar to the way he so-called created the track for the song "Bodak Yellow" for artist Cardi B. Anthony White also claims to had created that track in 10 minutes, when the track was already created by another producer for the song titled "Cinematic" performed by Raelene Arreguin PKA Queen Pheena. In 2017 Raelene Arreguin written and produced

two songs to submit to Klenord Shaft Raphael for Cardi B. Anthony White and his partner, mentor and manager Klenord Shaft Raphael reproduced the same songs for Cardi B and change the names of the songs to "Bodak Yellow" and "Money", basically just stealing the songs from Raelene Arreguin. Raelene Arreguin would file a lawsuit Pro Se, against Anthony White, Klenord Shaft Raphael, and Cardi B, unfortunately Raelene Arreguin would withdraw the case claiming unfairness in the courts and stated she was bullied by record company. [See Raelene Arreguin V Balcalis Marlenis Almanzar 2:2020-cv-06396 (cacd)].

27    Anthony White claims it took him 10 and 15 minutes to create the entire music for "Bodak Yellow" and "Savage", but yet in another Youtube video he states it took him two hours to program just drums to submit to Kanye West, which sounds believable when creating from scratch. However, the only way Anthony White created both tracks "Savage" and "Bodak Yellow" in 10 to 15 minutes was by reproducing Plaintiff's and another producer's work. He reproduced the "Savage" track in the studio simply to use Megan Thee Stallion and engineer Eddie "Emix" Hernandez and others as an alibi, a witness, just in case a claim against him arises again.

28    Normally the way a song is produced is by way of a music producer submitting tracks to recording artist and they would pick the tracks which has already been created, to work with. Afterwards they would set up a studio session for the song to be produced. Sometimes a music producer may be invited to a session to play music for the artist for submission, which means the music has already been created. Its highly rare for a music producer to be invited to a session and furthermore travel to another city, to produce a track on the spot, without having an idea of what he's about to produce, sounds fishy.

29    After finishing the music for "Savage", Anthony White stated, "He didn't know where the track came from, It came from out of nowhere", "It came from GOD and it was GOD sent". With this

statement made, out of his own mouth, Anthony White acknowledges the track didn't come from himself, but from somewhere else and he just didn't know where. Frequently people might hear an idea from someone else, the idea may go in one ear and out the other but stay in the subconscious mind. Then later on, the idea from the subconscious mind is activated, without knowing where the idea came from, one will believe it was their own idea. For example, Multi-Platinum Artist Shakira says she had an epiphany of a song and then wrote the song "Waka Waka". Shakira believed it was her idea, however, later would find out the same song was written and performed in 1986 entitled "Zangalewa" by the group Golden Sounds. The two parties would agree on a settlement. This might have been a case of "Subconscious Copying", explained in 1924 copyright infringement case quote, **"Everything registers somewhere in our memories, and no one can tell what may evoke it . . . . Once it appears that another has in fact used the copyright as the source of this production, he has invaded the author's rights. It is no excuse that in so doing his memory has played him a trick." see [Fred Fisher, Inc. v. Dillingham, 298 F. 145, 147-48 (S.D.N.Y. 1924)]** In this case, Plaintiff would be giving Anthony White the benefit of doubt. However, Plaintiff has all right to believe Anthony White infringement was done intentionally. Considering the way he allegedly produced the track, the time it took he claims to produce the track, his relationship and history with Klenord Shaft Raphael, nevertheless it's no way Anthony White or anyone in the music industry would have believed the unpublished music was in fact copyrighted, so he did what he normally does, reproduce others work without authorization. Just like a serial killer has a pattern, a kleptomaniac thief has a pattern also. Anthony White is nothing more than a fraud, a "Beat Jackin Thief", who's now been Caught.

## ACCESS

30   To establish a claim for copyright infringement through circumstantial evidence, a plaintiff must allege that the defendant had access to the copyrighted work. A plaintiff can establish "access" in three ways: (1) direct access; (2) access through third parties; and (3) "striking similarity" between the two works. **See Hofmann v. Pressman Toy Corp., 790 F. Supp. 498, 505 (D.N.J. 1990), aff'd, 947 F.2d 935 (3d Cir. 1991); Cottrill v. Spears, No. CIV.A. 02–3646, 2003 WL 21223846, at \*5 (E.D. Pa. May 22, 2003).**

31   **Striking Similarity**, where a plaintiff is unable to present any allegations regarding access, he can nevertheless satisfy the access requirement by showing that the two works are "of similarity which is so striking that the possibilities of independent creation, coincidence, and prior common source are, as a practical matter, precluded." **[Hofmann, 790 F. Supp. at 508]**. Although defendant Anthony White had access through a third party, the striking similarities and the core expression of idea between the two music compositions are undeniable identical, which precludes the need to present how Anthony White gain access through a third party, however the similarities also prove he had to have access. It's evident when listening to both tracks, as shown in the Virtual DJ comparison demonstration on the USB drive sent to all defendants.

32   **Third-Party Access**, A plaintiff may establish third-party access by alleging that a "third party had possession of plaintiff's work and had concurrent dealings with both plaintiff and defendant." **[Cottrill, 2003 WL 21223846, at \*5]** After diligent research and connecting the dots, defendant Anthony White gain access through a third party. Klenord Shaft Raphael who was his manager, mentor and also was his partner who he produced and wrote music with. Anthony White and Klenord Shaft Raphael has teamed up for years making music and exploiting other producer's music as if it was their own.

33  In circa 2000, Plaintiff and fellow producer Mark Richardson PKA Minnesota attended a LiL Kim's studio session at Hit Factory Studios in NYC to submit tracks to LiL Kim for her 2nd album, where they first met Klenord Shaft Raphael. The session was hosted by LiL Kim, her manager Hillary Weston and members of her management and production team. Plaintiff and Minnesota was introduced to members of their team including Klenord Shaft Raphael. Klenord Raphael was easy to remember because of the nick name Shaft. During the session while other producers played their music Shaft was one of the moderators picking tracks for Lil Kim. While producers played their music the moderators were being disrespectful towards producer's work. After a long wait, LiL Kim ask Plaintiff and Minnesota to come out to the hall area, where her and manager Hillary Weston apologize for their moderator's behavior and ask if Plaintiff and Minnesota would like to leave their music with them instead of waiting. While talking with LiL Kim and Hillary, Shaft came out to the hall and sat with a member at a table who was on his cell phone. After exchanging phone numbers with Hillary, (Plaintiff still has those numbers in an old phone book 212.974-7740 and 917217-7485) Hillary told Plaintiff and Minnesota to leave their music with them, Shaft and other person. Since the other person was on his phone, Plaintiff and Minnesota gave 2 CDs to Shaft with multiple tracks, which included Plaintiff's sound recording/music composition "It's About To Be On". Afterwards Plaintiff and fellow producer Minnesota left with a woman friend Cheryl Lee, who also attend the session with Plaintiff and Minnesota. **(See Affidavit of Truth by Mark Richardson)**

34  During this time Klenord Shaft Raphael was also a music producer. He also occasionally collected music from other producers to submit to record labels mainly Bad Boy Records, whom he became affiliated with. The next time Plaintiff would meet Klenord Shaft Raphael was in 2004 at Daddy's House Studios in NYC. A friend of Plaintiff name Kaseem aka Bug Out, who worked as security for Bad Boy Records, had set up a meeting with Plaintiff and Harve Piere of Bad Boy Records. Plaintiff went to

the meeting to submit music for Notorious BIG's Duet album, which was released in 2005. When Plaintiff arrive to the meeting Harve Piere sent his assistant to take the meeting with Plaintiff. After playing music for Harve Piere's assistant, Plaintiff would record 3 tracks onto CD for the assistant and leave. The next day the assistant called Plaintiff to ask if the tracks that were recorded were the same tracks that he had chosen. Plaintiff stated yes and the assistant ask Plaintiff can he come back to the studio to make sure he had chosen those tracks. Plaintiff went back to the studio to meet the assistant again to play the tracks he had chosen. This time Plaintiff and assistant went into one of the recording rooms to listen to the music through the big speakers. As the Plaintiff was playing music a group of men barged in the room to listen to Plaintiff music. One of the men was Shaft, at first Plaintiff didn't recognize Shaft until he introduce himself as Shaft, then Plaintiff acknowledge who he was, said what's up to him and continue to play his music. After playing the tracks and proving to the assistant that those were the tracks he had chosen, the assistant stated Harve Piere didn't like the tracks but he did and ask can Plaintiff play some more tracks for him. Plaintiff would play a few more tracks, the assistant asks to record some of the tracks, instead Plaintiff would give the assistant a CD and tell him the same tracks on the DAT cassette is on the CD. As Plaintiff was leaving the assistant was listening to the music on the CD with Shaft and the rest of the men in the room. At this time, the track "Its About To Be On" was on every CD Plaintiff submitted.

35  Over the years, Plaintiff would hear about Shaft and other producers affiliated with Bad Boy allegedly "Jacking Beats or Beat Jackin" from other producers, a terminology used in the music industry for stealing other producer's work. Shaft would later become known for taking credit for other producer's work, Allegedly Shaft would pass around music as if it was his own production.

36  When Shaft was mentoring and managing Anthony White, he would give him music created by other producers as if the music was his own music and have Anthony White reproduce and play the

music over, especially sampled music. This is how Anthony White learned how to produce Hip Hop

Music. Anthony White would reproduce the music and Shaft would get the producer's credit. Anthony

White having the musical talent to play keyboard, he was able to reproduce and mimic any beat he

heard from other producers. Allegedly, Shaft taught Anthony White "Beat Jacking" without him

knowing.

37  After investigating, there's no doubt in Plaintiff's mine about how and where Anthony White

access his music. He got access to the music from former manager and partner Shaft, whether he

remembered or not, that's who Plaintiff believes where Anthony White access the music from.

**(quoting Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996))**. To prove access, a plaintiff must

show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance

to view the protected work. Where there is no direct evidence of access, circumstantial evidence can

be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the

defendant's access. Clearly the chain of events is established in this situation, Klenord Shaft Raphael,

who had direct access to Plaintiff's music and also mentored and groomed Anthony White as his

protégé had to either give him a copy of Plaintiff's work or at least had him listen to Plaintiff's work.

It's very common in the music industry for producers to listen to other producers' work. As producers

call it stealing or harboring one's energy.

38  Anthony White has continued to make Hip Hop Music by the way he was taught by former

manager and mentor, where it has become normal for him to "Jack Beats" from other producers.

Knowing he can get away with it because most producers do not copyright their unpublish work until

now. This trend of "Beat Jacking" has become normal for most establish producers in the music

industry, Anthony White is no different. This is their way of staying on the top as a successful

producer. Whatever the music industry standards are then most producers with success will follow those standards of stealing other's work until all producers start to copyright their unpublish work.

## STATEMENT OF CLAIMS FOR RELIEF

39    Plaintiff, hereby bring action against defendants Megan Pete, Anthony White, 1501 Certified Entertainment and Warner Music Group arising from the following violations as follows:

## FIRST CLAIM FOR RELIEF
## Titles 17 U.S. Code § 501 - Infringement of copyright

40  Plaintiff, hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 39 above.

41  On March 6, 2020, defendants Megan Pete, 1501 Certified Entertainment, 300 Entertainment/Warner Music Group released the recording single, song titled "Savage" produced by Anthony White. The song "Savage", was later released as a remix featuring, Beyonce Knowles-Carter. Defendant's music recording "Savage" has undeniable "striking and substantial similarities" to Plaintiff's sound recording/music composition "Its About To Be On" and share the same expression of idea throughout.

The music composition of "Savage" is undeniable a reproduction, parody and is unauthorized derivative work of Plaintiff's registered copyrighted sound recording/music composition "Its About To Be On".

42    Defendants recreated, reproduced, streamed, performed, used, published, licensed, distributed and sold their version of Plaintiff's music composition/sound recording worldwide on multiple platforms and venues for financial gain without authorization or any form of agreement with Plaintiff.

43   Defendants actions violates Plaintiff's rights as the true copyright owner of the original sound recording/music composition "It's About To B On" arising under the 1976 Copyright Act, 17 U.S.C. Sections 101, et seq..

## SECOND CLAIM FOR RELIEF

## Titles 17 U.S. Code § 201 – Ownership of copyright

## Titles 17 U.S. Code § 106 - Exclusive rights in copyrighted works

44   Plaintiff, hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 39 above.

Plaintiff, James A Greene reserves and own all rights to sound recording /music composition/performing arts work "It's About To Be On", that was first created on Oct 7 1999 and registered with Copyright Office as a sound recording and performing arts work is protected under the 1976 U.S. Copyright Act and common law.

45    The sound recording/music composition titled "It's About To Be On" is filed under a valid Copyright Registration with a collection of sound recordings/music compositions as an instrumental album titled Makin Moves, et al., with the application titled The Big Score. The copyright registration was registered with the United States Copyright Office and also registered as performing arts work. Plaintiff is the author of all and entire contents of both copyright registrations and is the exclusive owner of the copyright registrations.  Plaintiff's copyright Registration # SRu 1-210-744 and PAu 4-147-512 (SEE ATTACHMENTS for copyright registrations).

46  Plaintiff, is the author of sound recording/music composition titled "Its About To Be On", and has, at all times been the sole owner of the sound recording/music composition and retains all rights of recreation, reproduction, sampling, distribution, stream, perform, sell, lend or lease.

47  According to U.S. Copyright ACT Titled 17 Section 106-122, Plaintiff is granted the exclusive rights:

(a) To reproduce the copyrighted work in copies or phonorecords.

(b) The right to prepare derivative works based upon the copyrighted work.

(C) The right to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.

(d) The right to perform the copyrighted work publicly (If the work is a literary, musical, dramatic, choreographic, pantomimes, pictorial, graphic, sculptural, motion pictures or other audio/visual works).

(e) The right to display the copyrighted work publicly (If the work is a literary, musical, dramatic, choreographic, pantomimes, pictorial, graphic, sculptural, motion pictures or other audio/visual works).

(f) The right to perform the copyrighted work publicly by means of a digital audio transmission.

48   Defendants distributed copies of their unauthorized derivative work "Savage" and performed the song "Savage" worldwide. Defendants did not receive permission or authorization from Plaintiff to distribute copies of their derivative work or recreate, reproduce a derivative work of Plaintiff's original sound recording/music composition.

49   Plaintiff's Copyrighted sound recording/music composition is directly infringed each time defendant's song "Savage" is played or streamed on any platform.

50   Plaintiff's Copyrighted sound recording/music composition is directly infringed each time the song "Savage" is performed by defendants on stage in concert or any other platform defendants may have perform the song on.

51    Plaintiff's Copyrighted sound recording/music composition is directly infringed each time a

recording of defendant's song "Savage" is reproduced, distributed or sold.

52    Plaintiff did not permit authorization to defendants for the recreation of Plaintiff's sound

recording/music composition "It's About To Be On". Therefor defendants obtain an unauthorize and

illegal copyright for derivative work, the song "Savage". Since Plaintiff is the exclusive owner of the

original sound recording/music composition and registered copyright, Plaintiff should have all rights

of ownership or part ownership of defendant's unauthorized derivative work "Savage".

### THIRD CLAIM FOR RELIEF

### Titles 17 U.S. Code § 1101

### Unauthorized fixation and trafficking in sound recordings and music videos

53    Plaintiff, hereby incorporates by reference and realleges each and every allegation of

Paragraphs 1 through 39 above.

Defendants created and distributed unauthorize music videos containing the unauthorize

music of derivative work "Savage". The videos appeared on Youtube and various platforms such as

TikTok and Twitter generating over 200 million views. Defendants was not granted permission to

create or distribute music videos of the reproduced version of "It's About To Be On".

### FOURTH CLAIM FOR RELIEF

### Titles 17 U.S. Code § 1006 – Entitlement to royalty payments

### Titles 17 U.S. Code § 1003 – Obligation to make royalty payments

54    Plaintiff, hereby incorporates by reference and realleges each and every allegation of Paragraphs

1 through 39 above.

Plaintiff has not been credited or received any royalties or any other financial benefits for the recreation and reproduction of Plaintiff's sound recording/music composition.

55    Due to the nature of this action, Plaintiff is entitled to royalties for his contributions of the recreation of his sound recording/music composition. The recreation work "Savage" generated a large portion of revenue worldwide from sales, streams and performances. Plaintiff by default should be entitled to royalties from revenue generated entirely, not limited to all forms of profits made from the song "Savage".

56    Defendants shall be obligated to pay royalties to Plaintiff, not only by default, but for Plaintiff's contributions as a co-writer of the song "Savage". The obligations should meet stipulations or orders made by the courts.

## FIFTH CLAIM FOR RELIEF

### Titles 17 U.S. Code § 504 - Remedies for infringement: Damages and Profits

57    Plaintiff, hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 39 above.

As a direct and proximate result of defendant's infringements of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiff is entitled to damages and entitled to defendant's profits pursuant to 17 U.S.C. § 504 for each infringement made worldwide on each and all platforms.

## REMEDIES

58    Monetary Compensation for the sum of Thirteen Million U.S. Dollars ($13,000,000.00).

59    25% of the Publishing Rights to defendant's song entitled "Savage".

60    The Royalty rate of 0.12%.

61    10% of all revenue accumulated, pertaining to shows performed, such as concert venues, TV performances etc.

62    Co/writers credit.

63    Defendants shall pay all court fees and all attorney fees if Plaintiff decides to hire one.

64    Any other such relief that this Court deems just and equitable.

65    Surety for the value of this complaint is utilized to guarantee that defendants in this matter effects the relief and assure the remedy of this complaint in Good Faith. If defendants are insufficient for coverage of payments, then public hazard bonds of defendants are seized to satisfy any remaining value. If the bonds of defendants are insufficient for coverage, the assets of the defendants will be utilized as follows the real and removable property and bank and savings accounts of defendants.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests in Good Faith, that this Court:

A.    For entry of judgment against defendants for all damages to which Plaintiff may be entitled, including defendant's profits and for damages in an amount as may be proven at trial. Alternatively, at Plaintiff's election, for the maximum statutory damages amount allowed by law for all individual copyright infringements involved in this action with respect to any one work, or for such other amount as may be proper pursuant to 17 U.S.C. § 504.

B.    For a permanent injunction enjoining defendants and their respective officers, agents, servants, employees, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, from (a) directly or indirectly infringing in any manner any of Plaintiff's respective copyrights or other exclusive rights (whether now in existence or hereafter

created), including without limitation, copyrights or exclusive rights under copyright in the

Copyrighted Sound Recording, and (b) causing, contributing to, enabling, facilitating, or participating

in the infringement of any of Plaintiff's respective copyrights or other exclusive rights (whether now

in existence or hereafter created), including without limitation, copyrights or exclusive rights under

copyright in the Copyrighted sound recording/music composition/performing arts work of Plaintiff.

C.   That Plaintiff receives writers' credit on behalf of the music productions of defendant's song

"Savage" and to be included on any awards, accolades, events of prestige and/or other public

recognition attributed to song "Savage" by defendants.

D.   That Plaintiff, James A Greene be granted such other and further relief as the Court may deem just

and proper.

E.   Defendants pay for all legal fees and attorney fees, if Plaintiff decides to hire attorney.

**Ledgering** for unauthorized recreation, reproduction of sound recording, the violations of Plaintiff's

unalienable rights, Public Policy, Public Trust, United Staes Constitution, Bill of Rights and Titles 17

U.S. Code § 501, 17 U.S. Code § 106, 17 U.S. Code § 504, 17 U.S. Code § 201, 17 U.S. Code § 1101, 17 U.S.

Code § 1003, 17 U.S. Code § 1006.


## ATTACHMENTS INCLUDES


 EXHIBIT 1, Copyright Infringement Notice

 EXHIBIT 2, Copy of both Copyright Registrations

 EXHIBIT 3, Keyboard and Chords Diagram

 EXHIBIT 4, Copy of USPS certified mail receipts.

## JURY TRIAL DEMAND


The Plaintiff Demands a trial by jury on all issues.

Respectfully Submitted

_____ (without prejudice UCC 1-308) Dated Feb 22, 2023

James A Greene, Pro Se

Tel; 646.460-0713

C/O Grayson Walker , Notary

1865B. East Tremont ave.

Bronx, New York 10460

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X          **AFFIDAVIT OF TRUTH**
James A Greene                                                                           **IN SUPPORT OF PLAINTIFF'S**
_____
                                                        Plaintiff                         **DECLARATION OF**
                            -against-                                                       M**ARK RICHARDSON**

WARNER MUSIC GROUP CORP
MEGAN PETE P/K/A MEGAN THEE STALLION
ANTHONY WHITE AKA  J White Did IT
1501 CERTIFIED ENTERTAINMENT
_____
                                                        Defendants
-----------------------------------------------------------------------X


### AFFIDAVIT OF TRUTH

I, Mark Richardson being duly sworn, deposes and say, I am a well-known music producer, artist and song writer since 1990 in the music industry. I have produced music for various Hip Hop artists such as Big Pun, Notorious BIG, LiL Kim, Junior Mafia, Public Enemy, Money Boss Players, Naughty By Nature, Mos Def, LiL Wayne, Jarule just to name a few. I also worked as the host DJ for Def Poetry Jam for 5 seasons and had Father Time as an assistant. In circa 2000, myself, Plaintiff pka Father Time and another producer name Mahogany was invited to play beats for LiL Kim for her upcoming album at Hit Factory Studios in NYC. Myself, Father Time and a woman friend Cheryl Lee went to the studio together while meeting Mahogany at Hit Factory. When we got to the studio we were greeted by Lil Kim and her manager Hillary Weston and was introduce to other members of their team. Some of the people I already knew because of working with LiL Kim, BIG and Junior Mafia on other projects previously. One of the members of their team a producer by the name Shaft I already knew, Shaft was an affiliate of Bad Boy Records. I meet Shaft playing music for Bad Boy Records at Daddy's House Studios and would run

into Shaft at different music industry functions. While being introduced, Mahogany who

had already been there was playing his beats accounting disrespect from LiL Kim's

moderators. After multiple producers were disrespected by the moderators. Before

we can play our beats, LiL Kim, out of respect, ask to speak to us outside the room along

with Hillary Weston. They both apologize about the behavior of their moderators and

ask if we wanted to leave our music to avoid conflict. While talking with LiL Kim and

Hillary, there was another member of the team sitting on the side at a table on his cell

phone. Shaft then came out the room and sat with him at the table. After talking with Kim

and Hillary Weston, she told us to give the music to Shaft and the other person sitting at

the table. We left 2 cds with them, shook their hands and left along with Cheryl Lee

The beats on the cds were beats myself and Father Time picked out to play for LiL

Kim. I remember the track "It's About To Be On" because we debated about submitting

beats for our group, Money Boss Players had planned to use and that beat "Its About To Be

On" was one. Father Time submitted it anyway. I, Mark Richardson pka Minnesota was also

 a victim of copyright infringement on several occasions by leaving unprotected music

throughout the music industry. From my experience with the music industry, managers

and artist would past a producer's music to other producers they were affiliated with, so

they can get the work. I would leave my music with management and next thing I would

hear my music produced by another producer who works under the same management

or affiliated with whom I gave music to.  It was like a trick they played on outside

producers. They would have producers come to play music, they would pick music

from you like they were interested, and have you leave your music just to steal it.

As a result, to Plaintiff's case, I, Mark Richardson, am a witness to the events, which started

at the Hit Factory studios, which lead to copyright infringement and I depose and say

my statements are true to the best of my knowledge.


Respectfully Submitted By

_Mark Richardson_____Date Sept 14,2022

Mark Richardson pka Minnesota
Email;MinnesotaMoneyBoss@Gmail.com
Tel; 347.683-2809