UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES A. GREENE,

> Plaintiff,

-v.-

WARNER MUSIC GROUP., MEGAN PETE, *p/k/a* MEGAN THEE STALLION, ANTHONY WHITE, *p/k/a* J WHITE DID IT, and 1501 CERTIFIED ENTERTAINMENT,

> Defendants.

---

23 Civ. 1555 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:[1]

Plaintiff James A. Greene is the author and holder of the registered copyright for the instrumental song *It's About To Be On* (or "Plaintiff's Work"). In this action, Plaintiff claims that Defendants — the artist, producer, and music publishing companies responsible for the more recent, and more widely known, song *Savage* (or "Defendants' Work") — infringed on his copyright. Defendants now move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants Defendants' motion and dismisses all of Plaintiff's claims with prejudice.

---

[1] Timothy C. Bradley, a rising second-year student at the New York University School of Law and an intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

## BACKGROUND[2]

### A.   Factual Background

#### 1.   The Parties

Plaintiff is a musician and hip-hop producer, and holds the registered copyright for the instrumental composition entitled *It's About To Be On*, which composition he created on or about October 7, 1999.  (AC ¶¶ 5, 63).

Defendant Megan Pete, known professionally as Megan Thee Stallion, is a "rapper, musician, and songwriter" who, together with Defendant Anthony White, a producer and songwriter, co-wrote a rap song entitled *Savage* on or about March 6, 2020.  (Def. Br. 3; AC ¶ 68).  Defendant 1501 Certified Entertainment, LLC ("1501 Certified Ent."), is a limited liability company based in Houston, Texas.  (AC ¶ 29).  Defendant Warner Music Group ("Warner Music") is a recording company based in California and New York.  (*Id.* ¶ 30).

---

[2]     This Opinion draws its facts from the Amended Complaint ("AC" (Dkt. #58)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court also relies, as appropriate, on Exhibit A to the Declaration of Ilene S. Farkas in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #65 ("Farkas Decl.")), which exhibit contains audio sound recordings embodying both works.  (*See* Farkas Decl., Ex. A, Track 1 ("Pl. Work"); *id.*, Track 2 ("Def. Work")).  *See Effie Film, LLC* v. *Pomerance*, 909 F. Supp. 2d 273, 298 (S.D.N.Y. 2012) ("It is well established that courts may take judicial notice of the works at issue in a copyright case.").

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #64); to Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss as "Pl. Opp." (Dkt. #66); to Plaintiff's supplemental memorandum of law in opposition to Defendants' motion to dismiss as "Pl. Supp. Opp." (Dkt. #67); to Defendants' reply memorandum of law as "Def. Reply" (Dkt. #68); and to Defendants' supplemental reply memorandum of law as "Def. Supp. Reply" (Dkt. #72).

### 2.    The Allegedly Infringed Work

*It's About To Be On* is a two-minute-and-forty-six-second instrumental piece, featuring two alternating sets of four vamping piano chords, accompanied by percussion consisting of a "kick, snare, [and] hi-hats" drum pattern, and intercut with "siren, [t]riangle [p]ercussion [], [w]ave [b]ells [], [and] [s]trings."  (AC ¶ 53).  The work is recorded at a 95 beats-per-minute ("bpm") tempo, and employs "a basic two-bar sequence with a 4/4 [t]ime [s]ignature throughout the whole composition."  (*Id.* ¶ 52).

After writing, producing, and recording the Work, on or about October 7, 1999, Plaintiff began distributing the Work "throughout the music industry to A&R's [Artists & Repertoire representatives], management teams, etc., with other unpublished compositions during the early part of the decade of 2000's." (AC ¶ 5).  In 2012, Plaintiff also began "posting his music on social media platforms, such as You Tube and Daily Motion."  (*Id.* ¶ 6).  Plaintiff does not allege, however, that his Work was ever commercially released or otherwise exploited.

### 3.    The Alleged Infringement

Plaintiff asserts that Defendants, by authoring and releasing *Savage*, "willfully cop[ied] and reproduced Plaintiff's music composition without permission and tried to disguise the music as if the composition was [their] own creation."  (AC ¶ 15).  Plaintiff presents no direct evidence of copying, instead relying on circumstantial evidence that Defendants gained direct access to his Work in connection with his entrepreneurial distribution efforts in

the early 2000s, coupled with arguments that his Work is sufficiently similar to *Savage* to support a claim.

### a.    Defendants' Access to Plaintiff's Work

According to Plaintiff, his Work ended up in Defendants' hands not through his own actions, but rather through those of non-party Klenord "Shaft" Raphael ("Raphael"), a well-known manager and music producer, who at one time was affiliated with White.  (AC ¶¶ 40-41, 44).  Plaintiff harkens back to "circa 2000, [when] Plaintiff ... attended a Li[l] Kim studio session at Hit Factory Studios in NYC to submit tracks to Lil Kim for her 2nd album."  (*Id.* ¶ 40).  At that session, Plaintiff "first met [Raphael]," who was serving as "one of the moderators picking tracks for Lil Kim."  (*Id.*).  While Plaintiff did not actually play his music for Raphael at the session, he "gave 2 CDs to [Raphael] with multiple music compositions, which included Plaintiff's [Work]."  (*Id.*).

Plaintiff next encountered Raphael at a different studio in 2004.  (AC ¶ 41).  At that time, Plaintiff was playing some tracks for an assistant of a Bad Boy Records executive, when "a group of men," including Raphael, "barged in the room to listen to Plaintiff['s] music."  (*Id.*).  Plaintiff played a number of different tracks for the assistant, Raphael, and the others in the room, and then gave the assistant a CD containing Plaintiff's music, including Plaintiff's Work.  (*Id.*).  As Plaintiff left the room, "the assistant was listening to the music on the CD with Shaft and the rest of the men in the room."  (*Id.*).

Raphael then met Defendant White "[a]llegedly in 2005," when White moved to New York.  (AC ¶ 43).  Raphael "would become [White's] mentor and

4

manager, teaching [] White how to produce Hip Hop Music." (*Id.*).  In doing so, Raphael would allegedly "give [White] music created by other producers as if the music was [Raphael's] own music and have [] White reproduce and play the music over, especially sampled music." (*Id.*).  Plaintiff describes this approach as "Beat Jacking," a trend that Plaintiff alleges "has become normal for most establish[ed] producers in the music industry." (*Id.* ¶¶ 43, 49).  And it is this "Beat Jacking" that Plaintiff alleges was the mechanism by which White gained access to Plaintiff's Work, then contained on a CD in Raphael's possession, and copied that Work when producing *Savage*.  (*Id.* ¶ 44).

### b. Alleged Similarities Between Plaintiff's Work and *Savage*

Plaintiff describes five alleged similarities between the works:  (i) a 4/4 time signature (AC ¶ 52); (ii) a structure consisting of a repeating two-bar sequence of notes in a pattern (*id.* ¶¶ 52, 54); (iii) overlapping instrumentation (*id.* ¶¶ 52, 55); (iv) a "trick play" accomplished by "[r]eplacing two instruments" in Plaintiff's Work with different sounds in Defendants' Work (*id.* ¶ 56); and (v) an underlying drum pattern (*id.* ¶ 58).

In particular, Plaintiff focuses on an allegedly similar two-bar sequence of repeating notes.  (AC ¶ 54).  Plaintiff claims that:

> Both piano sequences display 8 notes played exactly in the same location in a two-bar sequence.  In [b]oth sequences, the notes are played in Phrygian Mode which starts at E on [the] keyboard.  Plaintiff's piano sequence is played in a E major scale, while defendants' piano sequence is played a half step down in a (Ebm) E Flat minor scale.

(*Id.* ¶ 54).

Plaintiff further claims that the two works contain a similar use of sirens as instruments.  Plaintiff maintains that his Work contains a siren sound played in the key of F minor, and describes *Savage* as containing a siren sound played in the key of E-flat major.  (AC ¶ 55).  Plaintiff alleges that "White's idea to incorporate the siren into the composition is a dead giveaway, showing his composition was not independently created but [is] in fact a copy of [Plaintiff's Work]."  (*Id.*).

As additional evidence of similarity, Plaintiff suggests that Defendants used "a trick play" to mimic the structure of his Work without overtly copying it.  (AC ¶¶ 56-57).  To that end, Plaintiff contends that Defendants replaced the triangle and wave bells instrumentation from Plaintiff's Work with vocal samples and Roland TR-808 drum machine sounds on *Savage*, all while preserving the underlying role of the sounds in the work.  (*Id.*).  He claims that wave bells in his Work and the 808 sounds and vocals in *Savage* are "played in the same location in the second bar of the two-bar sequence" and "are also played in the same key."  (*Id.* ¶ 56).

Lastly, Plaintiff maintains that "[t]he drum pattern from '*Savage*' is almost identical but its two-bar sequence changes to another two-bar sequence during the song.  Despite the change in the second sequence of '*Savage*', both drum patterns continued to mirror each other throughout."  (AC ¶ 58).  What is more, Plaintiff argues that the similarity is evident upon synchronization of the tempos of the works, at which point the drum patterns are so similar that "the

average listener or any expert would think there was one composition playing."
(*Id.* ¶ 59).

B.  **Procedural Background**

Plaintiff initiated this action by filing the Complaint on February 22,
2023.  (Dkt. #1).  After some delay in connection with Plaintiff's efforts to
effectuate service (*see, e.g.*, Dkt. #12), all Defendants except Pete entered their
appearances on July 28, 2023 (Dkt. #30-31 (White and Warner Music)), and
August 10, 2023 (Dkt. #40 (1501 Certified Ent.)).  Pete thereafter entered her
appearance on August 22, 2023.  (Dkt. #45-47).  After stipulating to an answer
deadline, on September 11, 2023, Defendants filed pre-motion letters
indicating their intention to move to dismiss the Complaint.  (Dkt. #49, 51).
Plaintiff filed a response detailing his intended opposition on September 13,
2023.  (Dkt. #52).  On October 10, 2023, the Court held a pre-motion
conference at which it set a schedule for Plaintiff to file an amended complaint
and for briefing on Defendants' anticipated motion to dismiss.  (Dkt. #57).

Pursuant to that schedule, on November 9, 2023, Plaintiff filed the
Amended Complaint (the "AC"), which is the operative pleading in this case.
(Dkt. #58).  Defendants then filed their motion to dismiss and supporting
papers on December 22, 2023.  (Dkt. #63-65).  Plaintiff filed his opposition on
February 7, 2024.  (Dkt. #66).  Plaintiff filed a supplemental brief in opposition
of the motion on February 13, 2024.  (Dkt. #67).  Defendants filed a reply in
further support of their motion on February 14, 2024, and a supplemental brief
in further support of their motion on March 5, 2024.  (Dkt. #68, 72).

**DISCUSSION**

In the AC, Plaintiff asserts various copyright infringement claims against Defendants under the Copyright Act of 1976, 17 U.S.C. ch. 1-15 (the "Copyright Act") (*see* AC ¶¶ 75-91), as well as false designation of origin and reverse passing off claims under the Lanham Act, 15 U.S.C. § 1125 (*see id.* ¶¶ 107-116). Defendants now move to dismiss all of Plaintiff's claims. (*See generally* Def. Br.). The Court sets forth the applicable legal standards for a motion to dismiss before assessing the viability of Plaintiff's claims.

**A.      Applicable Law**

**1.      Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Allco Fin. Ltd.* v. *Klee*, 861 F.3d 82, 94-95 (2d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and citation omitted and alterations adopted); *see also Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (explaining that

8

a court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions").

When the plaintiff is proceeding *pro se*, his complaint is "held to [a] less stringent standard[ ] than formal pleadings drafted by lawyers." *Boykin* v. *KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). A district court must actively "interpret [his complaint] 'to raise the strongest arguments that [it] suggest[s].'" *McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Unless it is "beyond doubt" that a *pro se* plaintiff may "prove no set of facts in support of his claim[s] which would entitle him to relief," his complaint should not be dismissed. *Thomas & Agnes Carvel Found.* v. *Carvel*, 736 F. Supp. 2d 730, 756 (S.D.N.Y. 2010) (quoting *Leibowitz* v. *Cornell Univ.*, 445 F.3d 586, 590 (2d Cir. 2006)).

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). This narrow universe includes the "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Id.* (internal citation omitted and alternations adopted); *see also United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). Where, as here, the disputed works in a copyright action are attached to or incorporated by reference in the complaint, a district court can "consider the similarity between those works in connection with a motion to dismiss, because the court has

before it all that is necessary in order to make such an evaluation." *Peter F. Gaito Arch., LLC* v. *Simone Dev't Corp.*, 602 F.3d 57, 64 (2d Cir. 2010).

### 2.   Claims for Infringement Under the Copyright Act

To state a claim for copyright infringement, "the plaintiff must show: [i] ownership of a valid copyright; and [ii] unauthorized copying of the copyrighted work." *Jorgensen* v. *Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003) (citing *Feist Publ'ns, Inc.* v. *Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  A certificate of copyright registration is *prima facie* evidence of ownership.  *Id.* (citing 17 U.S.C. § 410(c)).

Upon a showing of valid copyright ownership, the plaintiff must allege (i) the "defendant has actually copied the plaintiff's work" and (ii) "the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Ritani, LLC* v. *Aghjayan*, 880 F. Supp. 2d 425, 441-42 (S.D.N.Y. 2012) (quoting *LaChapelle* v. *Fenty,* 812 F. Supp. 2d 434, 438 (S.D.N.Y. 2011)); *see also Jorgensen*, 351 F.3d at 51 ("To satisfy the second element of an infringement claim — the 'unauthorized copying' element — a plaintiff must show both that his work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'" (quoting *Castle Rock Entm't, Inc.* v. *Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998))).  Since direct evidence of actual copying is often unavailable, a plaintiff may instead provide circumstantial evidence that "the person who composed the defendant's work had access to the copyrighted material, and that there are similarities between the two works that are

10

probative of copying." *Jorgensen*, 351 F.3d at 51 (internal citations and quotations omitted); *see also Hines* v. *W Chappell Music Corp.*, No. 20 Civ. 3535 (JPO), 2021 WL 2333621, at *2 (S.D.N.Y. June 8, 2021).[3]

### a.   Access

To establish access, a plaintiff must identify events or circumstances indicating that the "alleged infringer had a 'reasonable possibility' —not simply a 'bare possibility' — of hearing the prior work." *Jorgensen*, 351 F.3d at 51 (quoting *Gaste* v. *Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988)). A plaintiff may show "access" by presenting facts showing either (i) "a particular chain of events by which the defendant might have gained access to the work," or (ii) "that plaintiff's work was widely disseminated" such that a court can infer access. *Clanton* v. *UMG Recs., Inc.*, 556 F. Supp. 3d 322, 328 (S.D.N.Y. 2021) (internal quotation marks omitted and alteration adopted). With particular respect to the latter, "[a] work is widely disseminated when it has had considerable commercial success or is readily available on the market." *Webb* v. *Stallone*, 910 F. Supp. 2d 681, 686 (S.D.N.Y. 2012) (internal quotation marks and citation omitted), *aff'd*, 555 F. App'x 31 (2d Cir. 2014) (summary order).

---

[3]   In *Repp* v. *Webber*, 132 F.3d 882, 889 n.1 (2d Cir. 1997), the Second Circuit noted that a longtime source of "considerable confusion" in copyright law had been the use of the term "substantial similarity" at multiple steps in the infringement analysis. In a clarifying footnote, the *Repp* court explained: "the term 'probative similarity' should be used when referring to the initial burden of proving copying by establishing access and/or similarities. After a plaintiff has proved copying, he must then show that the copying was unlawful by establishing 'substantial similarity' between the works at issue." *Id.* (internal citation omitted).

### b.    Similarity

"There is an inverse relationship between access and probative similarity such that the stronger the proof of similarity, the less the proof of access is required." *Jorgensen*, 351 F.3d at 56 (internal quotation marks omitted).  And a plaintiff may bypass showing access altogether by demonstrating that the two works are "strikingly" similar, a level of similarity necessarily higher than the "probative" similarity ordinarily required to prove copying.  *Id.*; *see also Klauber Bros., Inc.* v. *M.J.C.L.K., LLC*, No. 21 Civ. 4523 (PGG), 2022 WL 5108902, at *3 (S.D.N.Y. Oct. 4, 2022).  This standard requires that the works in question be "so strikingly similar as to preclude the possibility of independent creation." *Jorgensen*, 351 F.3d at 56 (quoting *Lipton* v. *Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995)); *see also Gal* v. *Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 537 (S.D.N.Y. 2007) ("[S]triking similarity exists when two works are so nearly alike that the *only reasonable explanation* for such a great degree of similarity is that the later was copied from the first." (emphasis added) (internal quotation marks and citation omitted)); *see also* 4 MELVILLE NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.02 (2021) ("At base … in human experience, it is virtually impossible that the two works could have been independently created.").

Still, not every similarity is actionable as a copyright infringement claim. Similarities between two works are probative only if those similarities "would not be expected to arise if the works had been created independently."  *O'Keefe* v. *Ogilvy & Mather Worldwide, Inc.,* 590 F. Supp. 2d 500, 517 (S.D.N.Y. 2008) (quoting *Velez* v. *Sony Discos,* No. 05 Civ. 615 (PKC), 2007 WL 120686, at *6

(S.D.N.Y. Jan. 16, 2007)).  For an element to be copyrightable, therefore, its "selection and arrangement … cannot be so mechanical or routine as to require no creativity whatsoever." *Feist Publ'ns, Inc.*, 499 U.S. at 362.  Moreover, "common elements [that] are found in many [] well-known songs … are unoriginal and constitute '*scènes à faire*' or ordinary, unprotectable expression." *Intersong-USA* v. *CBS, Inc.*, 757 F. Supp. 274, 282 (S.D.N.Y. 1991).  The Second Circuit has accordingly instructed courts to be "mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently appear in various compositions[.]" *Tisi* v. *Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000) (quoting *Gaste*, 863 F.2d at 1068).

## B. Plaintiff Has Not Adequately Alleged That Defendants Engaged in Illegal Copying of Plaintiff's Work

In moving to dismiss, Defendants do not dispute Plaintiff's ownership of a valid copyright over his Work, and instead focus their arguments on the sufficiency *vel non* of Plaintiff's allegations of actual and unlawful copying. Defendants argue, in particular, that Plaintiff has failed to plausibly allege access (Def. Br. 1-2), and that the two works are not substantially similar as a matter of law (*id.* at 2).  In the alternative, Defendants argue that Plaintiff cannot plausibly show that the works are strikingly similar, as is necessary to maintain a copyright claim where a plaintiff's theory of access is implausible. (*Id.* at 21 n.13; Def. Reply 6-8).  For the reasons discussed below, the Court agrees with Defendants that Plaintiff has failed to plausibly allege that Defendants had access to Plaintiff's Work, and has failed to establish that the

works are either substantially or strikingly similar.  Thus, Plaintiff has failed to plausibly plead copyright infringement under any theory, and his claim must be dismissed.

### 1. Plaintiff Fails to Plausibly Allege Defendants' Access to Plaintiff's Work

Beginning with access, a plaintiff may survive a motion to dismiss by presenting facts showing either (i) "a particular chain of events by which the defendant might have gained access to the work," or (ii) "that plaintiff's work was widely disseminated" such that the Court can infer access.  *Clanton*, 556 F. Supp. 3d at 328 (internal quotation marks omitted and alteration adopted). The Court, on its own review of the allegations in the AC, finds that Plaintiff cannot plausibly establish a "reasonable possibility" under either theory that Defendants had access to his Work.  *Webb*, 910 F. Supp. 2d at 686.

As discussed, Plaintiff's principal theory of access is based on the possibility that Defendants accessed his Work through a particular series of events involving non-party Raphael.  In relevant part, Plaintiff identifies two opportunities in which Raphael had access Plaintiff's Work: once in 2000 upon being given two CDs by Plaintiff containing multiple songs including Plaintiff's Work, and once in 2004 upon being given a CD containing multiple songs including Plaintiff's Work.  (AC ¶¶ 40-41).  Plaintiff alleges that Raphael, who Plaintiff claims was White's professional mentor, must have played Plaintiff's Work for White at some point in the intervening two decades between those events and the publication of *Savage.*  (*Id.* ¶ 44).  Even drawing all inferences in Plaintiff's favor, however, such speculative allegations support only the "bare

possibility" that Defendants had access to Plaintiff's work, and therefore cannot defeat a motion to dismiss. *See Jorgensen*, 351 F.3d at 51.

As a general matter, Plaintiff's theory, offered without factual support, is too attenuated to establish that Defendants had access to his Work through the non-party Raphael. *See Gaste*, 863 F.2d at 1066 (holding that "[a]ccess … may not be inferred through speculation or conjecture"). While a theory of access via a non-party is not *per se* unreasonable, a plaintiff must provide some degree of factual support to indicate how a defendant actually accessed the copyrighted material via the non-party. Otherwise, such an unadorned chain of access is simply "too speculative to plausibly state [that a defendant had] a reasonable opportunity to view [the work]." *Wager* v. *Littell*, 549 F. App'x 32, 33 (2d Cir. 2014) (summary order) (citing *Gaste*, 863 F.2d at 1066) (affirming dismissal for lack of access where plaintiff alleged that the at-issue manuscript was loaned to three non-parties who supposedly showed the manuscript to a defendant). Here, Plaintiff's allegations, even generously construed, fail to provide the necessary plausibility. Although Plaintiff alleges that "[his Work] was on every CD [he] submitted" to Raphael in 2000 and 2004, he does not allege any facts to suggest that Raphael actually listened to the Work on either CD he received. (*See* AC ¶¶ 40-41). At best, Plaintiff's allegations suggest that in 2004, on the second occasion of Plaintiff delivering his CD to Raphael, "[Raphael's] assistant was listening to the music on the CD with [Raphael] and the rest of the men in the room." (*Id.* ¶ 41). Yet even in that instance, it is unclear if the assistant actually listened to Plaintiff's Work,

as opposed to another track on the CD.  It is therefore unclear if Raphael had any awareness of Plaintiff's Work necessary to substantiate even the first link in Plaintiff's chain of access.

Nor does the fact that Raphael was allegedly a professional mentor to White increase the plausibility of Plaintiff's claims, as courts have found that such close professional relationships, without more, cannot substantiate a chain of access that is otherwise "based on speculation and conjecture rather than concrete evidence."  *Muller* v. *Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 442 (S.D.N.Y. 2011); *see, e.g.*, *Castro* v. *Cusack*, No. 15 Civ. 6714 (ENV) (LB), 2019 WL 3385218, at *7 (E.D.N.Y. July 26, 2019) (finding plaintiff's theory of access based on the alleged dissemination of a script to defendant's agent was "wholesale speculation"); *Jones* v. *Atl. Records*, No. 22 Civ. 893 (ALC), 2023 WL 5577282, at *4 (S.D.N.Y. Aug. 29, 2023) (dismissing claim for failure to allege access where plaintiff claimed that "her ex-business partner, … allegedly [defendant's] father[,] was motived to retaliate against [plaintiff]" and therefore showed the work to the defendant); *Hord* v. *Jackson*, 281 F. Supp. 3d 417, 423 (S.D.N.Y. 2017) ("Plaintiffs' naked assertions in their Complaint, that two non-parties allegedly showed the work to Defendants, are insufficient to establish access.").  Accordingly, Plaintiff is unable to allege any chain of events that creates anything more than the "bare possibility" that Defendants gained access to Plaintiff's Work via the two CDs that he allegedly distributed to Raphael in the early 2000s.  *Jorgensen*, 351 F.3d at 51.

Moving on, while Plaintiff does not explicitly argue that widespread dissemination of his Work may be circumstantial evidence of Defendants' access, the Court considers the argument in light of Plaintiff's *pro se* status. *See Graham* v. *Henderson,* 89 F.3d 75, 79 (2d Cir. 1996) ("[T]he pleadings of a *pro se* plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994))).  To establish circumstantial evidence of access based on widespread dissemination, a plaintiff must allege that his work enjoyed "considerable commercial success" or was "readily available on the market." *See Clanton*, 556 F. Supp. 3d at 328.

In this case, however, it is evident that Plaintiff's Work, which was never commercially released, was neither "readily available on the market," nor otherwise enjoyed "considerable commercial success."  *Clanton*, 556 F. Supp. 3d at 328; *cf. Acuff-Rose Music, Inc.* v. *Jostens, Inc.*, 988 F. Supp. 289 (S.D.N.Y. 1997) (finding widespread dissemination where plaintiff's song had a "top five ranking as a country hit" at the time of the alleged infringement); *ABKCO Music, Inc.* v. *Harrisongs Music, Ltd.*, 722 F.2d 988, 998 (2d Cir. 1983) (endorsing inference of access where plaintiff's song was "'Number One on the *Billboard* charts' in the United States for five weeks, and it was one of the 'Top Thirty Hits' in England for seven weeks that same year").  At best, Plaintiff alleges that he undertook his own efforts to distribute the Work "throughout the music industry to A&R's, management teams, etc., with other unpublished compositions during the early part of the decade of 2000's."  (AC ¶ 5)  Yet such

17

efforts alone fall short of widespread distribution, absent a stronger showing that the work was actually received and listened to by its desired audience. *See, e.g.*, *Cates* v. *Schlemovitz*, No. 21 Civ. 805 (AMN) (ML), 2023 WL 6200196, at *7 (N.D.N.Y. Sept. 22, 2023) (finding no widespread dissemination despite "[plaintiff's] distribution of the Composition and musical works containing the Composition to individuals in the music industry, ... his publication of the Composition online, ... public broadcasts of the Composition, and ... his performance of the Composition at various public and paid-entry venues"); *cf. Klauber Bros., Inc.* v. *URBN US Retail LLC*, No. 21 Civ. 4526 (GHW), 2023 WL 1818472, at *7 (S.D.N.Y. Feb. 8, 2023) (finding distribution of 150,000 yards of patterned lace insufficient to support a finding of access via widespread dissemination).

Nor does the fact that Plaintiff might have posted the Work "on social media platforms, such as You Tube and Daily Motion," support even a pleading-stage finding of widespread distribution, given that Plaintiff has offered no indication that his Work was actually viewed on any platform. (AC ¶ 6); *See, e.g.*, *Clanton*, 556 F. Supp. 3d at 328 (finding the mere fact that plaintiff's mixtape "was posted to several hip-hop websites and ... was posted on YouTube," was insufficient to establish widespread dissemination, where plaintiff "made no specific allegations about how many times the song was accessed on YouTube or on the [other] specialty hip-hop websites to which the Mixtape was uploaded"); *O'Keefe*, 590 F. Supp. 2d at 515 ("the mere fact that

[plaintiff's] work was posted on the internet prior to the creation of defendants'
work is insufficient by itself to demonstrate wide dissemination").

In sum, therefore, the Court finds that Plaintiff's allegations, even
generously construed, do not provide sufficient direct or circumstantial
evidence to support a finding that Defendants had reasonable access to
Plaintiff's Work.

### 2. Plaintiff Cannot Establish That the Works Are Similar

Having found that Plaintiff has not plausibly alleged that Defendants
gained access to his Work, the Court next turns to Plaintiff's allegations that
his Work is sufficiently similar to *Savage* to survive a motion to dismiss.  As
discussed, two standards might apply in this context: (i) substantial similarity
or (ii) striking similarity.  Substantial similarity is more permissive, and
requires a finding that "similarities between the two works … would not be
expected to arise if the works had been created independently."  *Velez,* 2007
WL 120686, at *6 (quoting *Odegard, Inc.* v. *Costikyan Classic Carpets, Inc.*, 963
F. Supp. 1328, 1337 (S.D.N.Y. 1997)).  Conversely, two works are not
substantially similar if the similarity between two works concerns only "non-
copyrightable elements of the plaintiff's work."  *Warner Bros.* v. *Am. Broad.
Cos.*, 720 F.2d 231, 240 (2d Cir. 1983).  Still, the substantial similarity
standard only applies where the plaintiff has established a modicum of access,
which Plaintiff has not done in this case.  In such other circumstances, where
access cannot be determined, a claim may only survive on by satisfying the
more demanding standard of striking similarity, requiring Plaintiff to show that

the works are "so strikingly similar as to preclude the possibility of independent creation." *Jorgensen*, 351 F.3d at 56 (citing *Lipton*, 71 F.3d at 471); *see also Cox* v. *Abrams*, No. 93 Civ. 6899 (RJW), 1997 WL 251532, at *5 (E.D.N.Y. May, 14 1997) ("[S]triking similarity exists when two works are so nearly alike that the only reasonable explanation for such a great degree of similarity is that the later ... was copied from the first." (internal quotation marks and citation omitted)).

As detailed below, and upon its own review of both Works, the Court finds that Plaintiff cannot establish that his Work was similar to *Savage* under either standard, thereby providing an independent ground for dismissal.  *See Peter F. Gaito Arch.*, 602 F.3d at 64 (holding that, in a copyright case, "the works themselves supersede and control contrary descriptions of them"); *McDonald* v. *West*, 138 F. Supp. 3d 448, 453 (S.D.N.Y. 2015) (noting that "[c]ourts ... regularly ... listen to the songs at issue when evaluating a motion to dismiss"), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) (summary order).

### a.  The Works Are Not Substantially Similar

To establish substantial similarity, Plaintiff alleges five similarities between the works:  (i) a 4/4 time signature (AC ¶ 52); (ii) a structure consisting of a repeating two-bar sequence of notes in a pattern (*id.* ¶¶ 52, 54); (iii) overlapping instrumentation (*id.* ¶¶ 52, 55); (iv) a "trick play" accomplished by "[r]eplacing two instruments" in Plaintiff's Work with different ones in *Savage* (*id.* ¶ 56); and (v) an underlying drum pattern (*id.* ¶ 58).  The Court

addresses each similarity in turn, finding each to be either unprotectible as a matter of law, or not nearly as similar as Plaintiff claims.

### i. Time Signature Is Not Protectible as a Matter of Law

Plaintiff alleges that both Plaintiff's Work and *Savage* use "a 4/4 [t]ime [s]ignature throughout the whole composition." (AC ¶ 52). While true (*compare* Pl. Work, *with* Def. Work), "the fact that two songs are similar in the sense that they both use 4/4 time — also called 'common time' — is not, without more, a probative similarity, because it is so commonplace that it is not unlikely to arise [in] independently created works." *Velez*, 2007 WL 120686, at *10 (citation omitted); *see also Griffin* v. *Sheeran*, 351 F. Supp. 3d 492, 500 (S.D.N.Y. 2019) (observing that "key, tempo, meter, and genre … are similar, albeit unprotectable elements"); *Currin* v. *Arista Records, Inc.*, 724 F. Supp. 2d 286, 291 (D. Conn. 2010) (finding that "the use of 4/4 rhythm [is] not … protectible"). Plaintiff therefore cannot base his claim of substantial similarity on the overlap in time signature between the two works.

### ii. The Rhythmic Sequence Described by Plaintiff Is Likewise Not Protectible

Relatedly, Plaintiff alleges that the "piano sequences [in both works] display 8 notes played exactly in the same location in a two-bar sequence … played in the same rhythmic pattern." (AC ¶ 54). Defendants, for their part, agree that both Plaintiff's Work and *Savage* employ the same basic rhythmic sequence, consisting of a repeating set of bars made up of three repeated notes followed by a higher note. (Def. Br. 17). As Defendants correctly note,

however, such a similarity is unsurprising, as it reflects a common musical pattern called a "*tresillo*," part of a family of rhythmic sequences that are a basic building block of music that, for the most part, cannot be subject to copyright.  *See, e.g.*, *Northern Music Corp.* v. *King Record Distrib. Co.*, 105 F. Supp. 393, 400 (S.D.N.Y. 1952) (observing that "[t]here is only a limited amount of tempos; these appear to have been long since exhausted; originality of rhythm is a rarity, if not an impossibility"); *Gottwald* v. *Jones*, No. 11 Civ. 1432 (CM), 2011 WL 4344038, at *5 (S.D.N.Y. Sept. 12, 2011) (noting the fact that "[t]he two song share the same rhythmic pulse, … is not copyrightable," and dismissing claim given that "[t]he two 'melodies' … sound nothing alike); *Cates*, 2023 WL 6200196, at *7 (finding a five-note sequence to be unprotectable and dismissing claim, even though "[d]efendants do not appear to dispute that the two sets of five notes are the same"); *Gray* v. *Perry*, No. 15 Civ. 5642 (CAS), 2020 WL 1275221, at *10 (C.D. Cal. Apr. 3, 2020) (finding "8-note *ostinato*" sequence unprotectable); COPYRIGHT OFFICE COMPENDIUM § 313.4(B) (3d ed. 2017) (classifying a "musical phrase consisting of three notes" as de minimis and thus not meeting the "quantum of creativity" required for copyright protection).

### iii.    The Instrumentation in Both Works Is Not Similar

Plaintiff next alleges similarities in Defendants' use of siren sounds and piano instrumentation.  As a threshold matter, claims of substantial similarity based on the mere decision to use the same instruments are largely foreclosed as a matter of law, as "the choice of a particular instrument is not

copyrightable; there is a limited universe of instruments to choose from in composing music." *Clanton*, 556 F. Supp. 3d at 334 (further remarking that a plaintiff's "choice of an organ for the opening note or chord [in his work] does not give him a right to withdraw that instrumentation from the public domain"); *see also Peabody & Co. LLC* v. *Wayne*, No. 22 Civ. 10316 (AT), 2024 WL 552495, at *3 (S.D.N.Y. Feb. 12, 2024) (dismissing claims of similarity where, in part, the two works' "choice of [a] group of common instruments is not so original as to warrant copyright protection" (citing *Clanton*, 556 F. Supp. 3d at 334)); *Rose* v. *Hewson*, No. 17 Civ. 1471 (DLC), 2018 WL 626350, at *7 (S.D.N.Y. Jan. 30, 2018) ("The use of a tambourine ... is not protectable."); *VMG Salsoul, LLC* v. *Ciccone*, No. 12 Civ. 5967 (BRO) (CWX), 2013 WL 8600435, at *6 (C.D. Cal. Nov. 18, 2013) (finding a work's use of two sequences of "horn hits" to be unprotectable), *aff'd in part, vacated in part on other grounds*, 824 F.3d 871 (9th Cir. 2016).  For this reason, Plaintiff's argument that the two works use the same siren sounds and piano instrumentation is insufficient to establish similarity.

Moreover, upon closer review, the use of each instrument is qualitatively distinct across the two works, such that "[u]nder the ordinary observer test, no reasonable jury could find that the works are substantially similar." *Peabody*, 2024 WL 552495, at *3.  Notably, Plaintiff claims that "both compositions [contain] the siren sound," and that "[t]he idea and expression of the sirens are the same and give the music of both compositions the same effects and dynamics."  (AC ¶ 55).  Yet this characterization is belied by the actual siren

sounds in both works.  In Plaintiff's Work, the siren sound is an atonal chord that appears to be created using a synthesizer.  (*See* Pl. Work).  By contrast, in *Savage*, the alleged siren sound is not a siren at all, but rather is a distorted vocal sample.  (*See* Def. Work).  Put simply, no reasonable listener would discern any similarity between the siren sound in Plaintiff's Work and any sound in Defendants' work.  *Accord Peabody*, 2024 WL 552495, at *3 (finding no substantial similarity where "[t]he [plaintiff's song] involves acoustic instruments; [and] the instrumental to [the defendants' song] consists primarily of synthesizer").

Even Plaintiff recognizes this difference, conceding that "[t]he siren sound in 'It's About To Be On' is played in F minor chord, while the siren sound in 'Savage' is played in (Eb) Eb major chord.'"  (AC ¶ 55).  To maintain his claims, Plaintiff theorizes that, while "[t]he siren used in [] 'It's About To Be On' is more of a traditional siren sound," than that used in *Savage*, the works are nevertheless similar, as "the original siren sound [in *Savage*] was almost exactly the same until Anthony White altered and modified the sound."  (*Id.*).  Yet, and as discussed above, Plaintiff has not plausibly established that White actually gained access to the underlying Work sufficient to provide any foundation for his allegation that White allegedly interpolated the actual recorded siren sound from Plaintiff's Work.  And to the extent that Plaintiff and White each used the same siren instrument, but White opted to play different chords, such a creative choice is not copyrightable.  *Cf. Boone* v. *Jackson*, 206 F. App'x 30, 32 (2d Cir. 2006) (summary order) (finding no similarity between

24

two songs where "the call and response [element] applied only generically to the two songs and was executed in defendants' song in a different way and to varying degrees" (internal quotation marks and citation omitted)).  The Court therefore finds that Plaintiff has not plausibly alleged any similarity in instrumentation with respect to the siren.

Next, Plaintiff claims that both works use a similar "piano sound."  (AC ¶ 54).  Once again, however, the Court's review of the works reveals that the so-called piano notes that form the predominant instrumentation of each work are appreciably different.  Plaintiff's Work features a two-bar piano pattern comprised of: (i) one set of three of the same notes followed by a different higher fourth note; then (ii) the same three notes again followed by a different, even higher fourth note.  (*See* Pl. Work).  By contrast, *Savage* employs a one-bar synthesizer pattern of three notes, followed by a higher fourth note that does not change and that is different from both fourth notes in Plaintiff's Work.  (*See* Def. Work).  The differentiation between piano and synthesizer instrumentation and note pattern is significant, and appreciable to an ordinary observer.  *See Peabody*, 2024 WL 552495, at *4 (finding that plaintiff failed to plausibly plead substantial similarity because "[plaintiff's song] uses synthesizers, as opposed to the acoustic instruments contemplated by the [defendants' song]"); *cf. McDonald*, 138 F. Supp. 3d at 460 (finding no substantial similarity in part where "[p]laintiff's minimalist music is played on an acoustic guitar," while "[d]efendants' richer instrumental consists primarily of synthesizer and samples"); *Edwards* v. *Raymond*, 22 F. Supp. 3d 293, 301

(S.D.N.Y. 2014) (finding no substantial similarity in part because "the Challenged Song contains significantly sparser instrumentation backing the singers' vocals than does the [p]laintiffs' Song").

### iv. The Drum Patterns of the Two Works Are Not Similar

The Court next considers the alleged "similarity of the drum pattern." (AC ¶ 58). While, as discussed above, well-established rhythmic structures are not copyrightable as a matter of law, courts recognize the possibility that specific, plausible allegations of copying drum patterns could be used to show substantial similarity. *See, e.g.*, *McDonald*, 138 F. Supp. 3d at 458 ("If Plaintiff were able to plausibly allege that Defendants copied or even paraphrased his percussion, such a complaint might state a claim." (citing *Vargas* v. *Pfizer*, 418 F. Supp. 2d 369 (S.D.N.Y. 2005)). Here, Plaintiff claims that "[t]he drum pattern from '*Savage*' is almost identical" to that of Plaintiff's Work. (AC ¶ 58). Yet, as elsewhere, Plaintiff's conclusory characterization of the two works does not hold up to an actual comparison of the works themselves.

Plaintiff's Work features a repeating drum pattern of two syncopated bass notes followed by a snare hit. (*See* Pl. Work). By contrast, *Savage* features two syncopated bass notes followed by a clap. (*See* Def. Work). Despite this cursory and unprotectable structural similarity, the substance of the two drum patterns is qualitatively different, and would preclude an ordinary listener from finding substantial similarity. Indeed, by Plaintiff's own admission, the drums do not follow the same pattern in the works themselves,

as the drum pattern in *Savage* is played at an entirely different tempo (*i.e.*, 84.50 beats per minute) than that of Plaintiff's Work (*i.e.*, 95 beats per minute). (*See* Pl. Work; Def. Work; *see also* Def. Supp. Reply 1 (noting that Plaintiff's visual recreation of the drum patterns in both works confirms differences between those in Plaintiff's Work and those in *Savage*)).

Nor is it dispositive that the drum patterns of Plaintiff's Work and *Savage* are consonant when the tempos of the works are synchronized, as "[u]pon any work ... a great number of patterns of increasing generality will fit equally well." *Nichols* v. *Univ. Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930). (*See* AC ¶ 59 (alleging that the drum patterns of the two works are similar when "played [] on top of each other at the same time and same bpm/tempo")). As the Second Circuit has expressly instructed, courts must reject "attempt[s] to demonstrate substantial similarity" by "alter[ing] the actual sequence or construction of plaintiffs' work in order to achieve a juxtaposition that makes for greater similarity with defendants' work." *Warner Bros. Inc.* v. *Am. Broad. Cos., Inc.*, 654 F.2d 204, 211 (2d Cir. 1981). Rather, "the works themselves supersede and control contrary descriptions of them," whether in the pleadings or in the parties' other submissions. *McDonald* v. *West*, 669 F. App'x 59, 60 (2d Cir. 2016) (summary order) (quoting *Peter F. Gaito Arch., LLC*, 602 F.3d at 64).

Ultimately, such vague allegations of percussive similarity, presented without evidence "that Defendants copied or even paraphrased" Plaintiff's Work, are inadequate to state a claim. *McDonald*, 138 F. Supp. 3d at 458 (finding that plaintiff had failed to state a claim because allegations that the

works shared "shuffling percussion" without any evidence of copying was not enough to allege substantial similarity); *Rose*, 2018 WL 626350, at *7 (finding conclusory allegations regarding similarities in "drum, percussion, and bass line [to be] too vague to describe protectable expression").

### v.   Plaintiff's Alleged "Trick Play" Similarity Is No Similarity at All

Plaintiff claims one final similarity: "a trick play, where … White replaced two instruments with his own instruments but failed to disguise the instruments as if it was his own creativity." (AC ¶ 56). In particular, Plaintiff claims that White "replaced [] the triangle sound with the sound of the voice sample," and also "replaced [] the wave bells instrument used in '*It's About To Be On*' with an 808 sound." (*Id.*). Yet Plaintiff's concession that the instruments have been changed only supports the finding that there is no similarity between the works. *See Boone*, 206 F. App'x at 32 (finding no similarity where generic elements were "executed in defendants' song in a different way and to varying degrees" than in plaintiff's song (internal quotation marks omitted)). Because Plaintiff has not alleged that there is actionable similarity on this element, the allegation cannot support his claim.

Ultimately, and in light of the foregoing discussion, it is clear that no ordinary observer would find Plaintiff's Work to be substantially similar to *Savage* to a degree necessary to sustain a copyright claim. At its core, Plaintiff's Work is an instrumental piece, with little variety in sounds and instruments used throughout. (*See* Pl. Work). By contrast, *Savage* is a pop song, featuring lyrics as well as a more upbeat tempo. (*See* Def. Work).

Plaintiff's Work is qualitatively different from *Savage*, and any similarities implicate common, non-copyrightable elements of any song.  *See Edwards*, 22 F. Supp. 3d at 301 (dismissing claim for lack of substantial similarity because "the [p]laintiffs' Song is in significant part a rap song[, and] [t]he Challenged Song has no rapping; [the artist] sings all of the lyrics").[4]

### b.   The Works Are Not Strikingly Similar

Absent plausible allegations of access and substantial similarity, the success of Plaintiff's copyright claims depends on whether Plaintiff can establish that two works are "strikingly similar."  *See Jorgensen*, 351 F.3d at 56 (explaining that copyright infringement plaintiffs need not prove access if they can show that the works are "so strikingly similar as to preclude the possibility of independent creation").  As with substantial similarity, however, the Second Circuit has held that striking similarity can be foreclosed as a matter of law even at the pleading stage.  *See Wager*, 549 F. App'x at 34 (citing *Peter F. Gaito Arch., LLC*, 602 F.3d at 63-64).  In particular, the Second Circuit has indicated that such a determination is appropriate only when "'no

---

[4]   Nor could Plaintiff succeed in any argument that his Work's combination of the elements is protectable, even if the individual elements are not, as such an argument requires the elements to be "numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Structured Asset Sales, LLC* v. *Sheeran*, 673 F. Supp. 3d 415, 421 (S.D.N.Y. 2023) (quoting *Skidmore as Tr. for Randy Craig Wolfe Tr.* v. *Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020)).  This threshold is stringent, and is not met by "[m]erely listing random similarities scattered throughout the works," as Plaintiff does in this case.  *Montgomery* v. *Holland*, 408 F. Supp. 3d 353, 363 (S.D.N.Y. 2019) (citation and internal quotation marks omitted); *see also Nwosuocha* v. *Glover*, No. 21 Civ. 4047 (VM), 2023 WL 2632158, at *7 (S.D.N.Y. Mar. 24, 2023) (rejecting as many as nine common elements as insufficient as a matter of law), *aff'd on other grounds*, No. 23-703, 2024 WL 2105473 (2d Cir. May 10, 2024) (summary order).

reasonable jury, properly instructed, could find that the two works' are strikingly similar."  *Id.*  Additionally, "[t]he striking similarity test is applied with particular stringency in cases ... involving popular music."  *Clanton*, 556 F. Supp. 3d at 330 (quoting *Tisi*, 97 F. Supp. 2d at 548) (internal quotation marks omitted); *see also Gaste*, 863 F.2d at 1068-69 ("[S]triking similarity between pieces of popular music must extend beyond themes that could have been derived from a common source or themes that are so trite as to be likely to reappear in many compositions.").

Given the Court's finding that Plaintiff cannot establish substantial similarity between his Work and *Savage*, it follows logically that Plaintiff cannot clear the comparatively higher bar and establish striking similarity between the works.  S*ee Warner* v. *Amazon.com, Inc.*, No. 22 Civ. 5907 (ALC), 2023 WL 6317954, at *8 n.8 (S.D.N.Y. Sept. 28, 2023) ("Plaintiff's failure to adequately plead 'substantial similarity' necessarily means Plaintiff has failed to plead 'striking similarity.'"); *Gal* v. *Viacom Intern., Inc.*, 518 F. Supp. 2d 526, 538 (S.D.N.Y. 2007) ("[Striking similarity] requires, not surprisingly, more than a showing of substantial similarity." (internal quotation marks omitted)); *Jorgensen* v. *Careers BMG Music Pub.*, No. 01 Civ. 357 (LAP), 2002 WL 1492123, at *5 (S.D.N.Y. July 11, 2002) (finding that plaintiff failed to show striking similarity where his expert "conclude[d] that the songs at issue [were] only 'substantially similar' and not 'strikingly similar'").  Therefore, and for substantially the same reasons set forth in its analysis of substantial

similarity, the Court finds that Plaintiff has not alleged that the two works are strikingly similar.

Unable to establish access, substantial similarity, or striking similarity, Plaintiff cannot maintain a claim for copyright infringement under any theory, and Plaintiff's copyright claim must be dismissed.

## C.    The Court Dismisses Plaintiff's Remaining Claims

Having found that Plaintiff cannot maintain a copyright claim, the Court briefly considers Plaintiff's remaining claims for relief, finding each to be unavailing.  As a threshold matter, Defendants are correct that Plaintiff's third, fourth, and seventh claims, seeking royalty payments and damages for copyright infringement, are in fact the remedies available upon a finding of copyright infringement.  (*See* Def. Br. 23 (citing AC ¶¶ 102-106, 117-118)).  As the AC does not set forth any viable claim for infringement, Plaintiff is not entitled to any of the remedies set forth in those counts.

Relatedly, Plaintiff's second claim for relief seeks a declaration of "[o]wnership of copyright" and [e]xclusive rights in copyrighted works."  (AC ¶¶ 92-101).  As Plaintiff's ownership of the copyright for his own Work is uncontested, such a claim ostensibly represents Plaintiff's attempt to assert an interest in *Savage*, in light of his position that the song is an "unauthorized derivative" of his Work.  (*Id.*).  Notwithstanding the fact that such a declaration does not constitute an "independent substantive claim," separate from the claim for copyright infringement discussed above, any claims by Plaintiff to an interest in *Savage* fail for the same reasons that render his copyright

infringement claim a nonstarter. *Johnson* v. *Magnolia Pictures LLC*, No. 18 Civ. 9337 (VB), 2019 WL 4412483, at *3 (S.D.N.Y. Sept. 16, 2019).

Finally, Plaintiff's claims for "False Designation of Origin" and "Reverse Passing Off" under the Lanham Act fail in light of the Supreme Court's holding in *Dastar*, foreclosing the possibility of claims for failure to credit copyrightable work under the Lanham Act. *See Dastar Corp.* v. *Twentieth Century Fox Film Corp.*, 539 U.S. 23, 26-27, 37 (2003) (holding that the term "origin of goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept or communication embodied in those goods"). (*See* AC ¶¶ 107-116). Consistent with this well-established precedent, Plaintiff's claims under the Lanham Act must therefore be dismissed. *See, e.g.*, *Fioranelli* v. *CBS Broad. Inc.*, 232 F. Supp. 3d 531, 539 (S.D.N.Y. 2017) (dismissing Lanham Act claims and holding that *Dastar* "precludes Plaintiff's Lanham Act claim because Plaintiff is merely trying to use the Lanham Act as an end run around the copyright laws or to add another layer of protection to copyright holders"); *Nat'l Lighting Co., Inc.* v. *Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 564 (S.D.N.Y. 2009) (dismissing reverse passing off claim that "flies in the face of ... *Dastar*"); *Atrium Grp.* v. *Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505, 512 (S.D.N.Y. 2008) (holding that *Dastar* required dismissal of false designation of origin claim, where plaintiff alleged that defendants' architecture and design books contained "the exact photographs, layout, design and creative content" as plaintiff's works).

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to allege a claim of copyright infringement, and Defendants' motion to dismiss the AC for failure to state a claim is hereby GRANTED.

The Clerk of Court is directed to terminate all pending motions, including the pending motion at docket entry 63, adjourn all remaining dates, and close this case.

The Court further certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.  *Cf. Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:     June 18, 2024
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge